UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDWARD BROWN,

                          Petitioner,          06-CV-06274

          v.                                   **DECISION
                                               and ORDER**
ISRAEL RIVERA, Superintendent,
Coxsackie Correctional Facility, and

ELIOT SPITZER, Attorney General,
State of New York,

                          Respondents.
_____

## INTRODUCTION

     Petitioner Edward Brown ("Petitioner" or "Brown") filed this
*pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2254 challenging his conviction in Monroe County Court.
Petitioner cites twelve grounds for habeas relief, including claims
that: (1) the trial court took insufficient action to remedy the
admission of improper evidence; (2) the trial court improperly
denied suppression of Petitioner's confession to police; (3) he was
denied effective assistance of trial counsel; and (4) he was denied
effective assistance of appellate counsel.

     For the reasons set forth below, the Court finds that
Petitioner's claims are not cognizable or without merit.  Brown's
§ 2254 petition is therefore dismissed.

## BACKGROUND

     On June 29, 1995, Petitioner, who at the time was seventeen
years old, was arrested in connection with the homicide of Tyshawn
Flagler ("Flagler" or "the victim").  (Huntley Hearing, Dec. 19,

1995, ("H.H.1") at 3-5.)  Petitioner's mother, Mahalia Cash ("Cash"), was present when her son was arrested, and, according to her testimony, told Petitioner in the presence of the arresting officers to get himself a lawyer. (Huntley Hearing, Jan. 2, 1996, ("H.H.2") at 40-41; Trial Transcript ("Tr.") at 765.)

The officers then transported Petitioner to the Public Safety Building in Rochester, where they led Petitioner to an interrogation room and informed him of his Miranda rights. (H.H.1 at 5, 10; H.H.2 at 67)  Petitioner stated that he understood those rights.  (H.H.2 at 67-68.)  Petitioner then took part in an interview with Detective Vito D'Ambrosio and Sergeant Deral Givens of the Rochester, New York, police department.  (H.H.2 at 14.) According to Det. D'Ambrosio, Petitioner confessed to chasing Flagler and firing at him with an AK-47 assault rifle.  (H.H.2 at 19-20; Tr. at 657-58.)

At a pre-trial hearing pursuant to People v. Huntley, the trial court heard testimony from Cash that, at the time Petitioner was arrested, she informed one of the arresting officers, Off. Felix Montalvo, that her son needed a lawyer. (H.H.2 at 42.)  Both of the other arresting officers testified that they did not overhear Cash tell Off. Montalvo that Petitioner needed a lawyer. (H.H.1 at 8; H.H.2 at 13.)  Cash further testified that she visited the Public Safety Building that same day, while Petitioner was being interviewed.  (H.H.2 at 44.)  Cash asserted that she subsequently re-encountered Off. Montalvo shortly after 10:00am and

inquired whether her son had requested an attorney. (Id.) According to Cash, Off. Montalvo replied that Petitioner had not asked for a lawyer and that Petitioner had confessed. (H.H.2 at 44-45.)

Off. Montalvo did not testify at the <u>Huntley</u> Hearing. However, Sgt. Givens testified that he saw Cash at the Public Safety Building at approximately 1:00pm the day Petitioner was arrested. (H.H.2 at 24-25.) Sgt. Givens further stated that he had a brief conversation with Cash, during which she inquired if he had been questioning Petitioner. (H.H.2 at 24.) When Sgt. Givens confirmed that he had been questioning her son, Cash reportedly asked, "Shouldn't he have an attorney?" (Id.) Sgt. Givens testified that he responded it was up to Petitioner to request an attorney. (Id.) According to Sgt. Givens, neither Det. D'Ambrosio nor Off. Montalvo was present during this conversation with Cash. (H.H.2 at 24-25.)

Petitioner's trial attorney argued at the <u>Huntley</u> Hearing that Petitioner's confession had not been obtained voluntarily. By the Rochester Police Department's own account, Petitioner did not actually confess until approximately 12:10pm on June 29. (Tr. 701.) When Off. Montalvo allegedly informed Cash that Petitioner had already confessed shortly after 10:00am, Petitioner's attorney argued that Montalvo disingenuously characterized Petitioner's situation as a fait accompli, calculating that this would discourage Cash from seeking legal

assistance for her minor son with any urgency. Petitioner's counsel argued that Off. Montalvo employed deception and trickery to seal off the most likely avenue by which the seventeen-year-old Petitioner could gain the assistance of counsel.[1] (Court Appearance, Feb. 7, 1996, at 4-5.)

After evaluating all of the evidence presented at the <u>Huntley</u> Hearing, the trial judge determined as a matter of fact that the police did not isolate Petitioner from his mother in violation of <u>Townsend</u>. (Court Appearance, Jan. 31, 1996, at 2.) The court further found as a matter of law that Petitioner's confession was voluntary and admissible at trial. (Id.)

At trial, Petitioner testified that he was with his girlfriend, Loriette Henderson ("Henderson"), in a different area of Rochester when Flagler was killed on Jefferson Terrace. (Tr. at 824-26.) Henderson, however, testified that she was not in fact with Petitioner at that time. (Tr. at 886.) Additionally, three witnesses placed a blue four-door Honda with tinted windows at the scene of the crime. (Tr. at 541, 580, 632-33.) Two witnesses testified that Petitioner was driving that vehicle near the crime scene just prior to the shooting. (Tr. at 544-45, 632-33.) Two witnesses also testified that the shooter was standing next to that vehicle while he shot at the victim. (Tr. at 551, 583.) One

---

[1] Such activity is proscribed by <u>People v. Townsend</u>, 33 N.Y.2d 37, 41-42 (1973) ("The courts should not accept a confession obtained by the police through tactics calculated to make certain that the defendant's parents will not take any steps to get him a lawyer").

witness positively identified Petitioner as the shooter.  (Tr. at 553.)

Det. D'Ambrosio testified regarding the details of Petitioner's confession.  (Tr. at 656-59.)  According to Det. D'Ambrosio, Petitioner confessed that he was driving on Jefferson Avenue when he saw Tyshawn Flagler standing on the sidewalk. (Tr. at 657.)  Brown allegedly told Det. D'Ambrosio that Flagler pulled out a handgun and pointed it at Petitioner, but then ran away without firing a shot.  (Id.)  Petitioner allegedly told Det. D'Ambrosio that he then chased Flagler to Jefferson Terrace, where he "jumped out" of his vehicle and "opened up" on Flagler with an AK-47 assault rifle.  (Tr. at 657-58.)

Toward the end of his testimony on direct examination, Det. D'Ambrosio stated that Petitioner revealed how he disposed of the crime vehicle following the shooting.  (Tr. at 659.)  On cross examination, Det. D'Ambrosio repeated his testimony regarding Petitioner's admitted disposition of the crime vehicle.  (Tr. at 676-77.)  Sgt. Givens also testified on cross examination that Petitioner's confession included how he disposed of the crime vehicle.  (Tr.  at 716.)

At the conclusion of the prosecution's evidence, Petitioner's trial counsel moved to strike those portions of the testimony given by Det. D'Ambrosio and Sgt. Givens pertaining to Petitioner's alleged confession regarding the disposition of the crime vehicle. (Tr. at 739-744.)  Trial counsel's stated grounds were that the

information in question was not included in the prosecution's pre-trial notice to Petitioner regarding evidence of Petitioner's statements to police that the prosecution planned to use at trial. (Id.) Such disclosure is required by New York Criminal Procedure Law § 710.30. (Id.) The trial court initially reserved judgment, and the defense proceeded to call witnesses. (See Tr. at 744, 746.) Just before the jury heard closing arguments, the trial court granted Petitioner's motion, striking the testimony elicited during the direct and cross-examinations of Det. D'Ambrosio and Sgt. Givens regarding how Brown allegedly disposed of the vehicle observed at the crime scene. (Tr. at 892.) The trial court further gave a curative instruction to the jury to disregard that testimony. (Id.)

The jury found Petitioner guilty of intentional second degree murder. (Tr. at 964-65, 979.) After the jury returned its verdict, but prior to sentencing, Petitioner's trial attorney moved to set aside the verdict pursuant to C.P.L. § 330.30 on grounds that striking a portion of the police officers' testimony from the record followed by a curative instruction was insufficient to remedy the "severe damage" from Sgt. Givens's and Det. D'Ambrosio's testimony regarding Petitioner's alleged confession regarding the disposition of the crime vehicle. (State Court Records received in Docket Oct. 3, 2006, Appendix ("App.") C at 60-64.) Trial counsel argued that it was "impossible" for the jury to put this testimony out of their minds, and that it seriously undermined the defense's

contention that there was no evidence linking Petitioner to the crime vehicle. (Id.) The trial judge denied Petitioner's motion to set aside the verdict. (Sentencing, May 3, 1996, ("Sentencing") at 9.) Petitioner was subsequently sentenced to an indeterminate period of incarceration with a maximum of life and a minimum of twenty-five years. (Sentencing at 16.)

On direct appeal, Petitioner's appellate counsel argued two points. First, he claimed that the trial court improperly denied Petitioner's motion to set aside the verdict pursuant to C.P.L § 330.30. (App. B at 19-23.) Specifically, appellate counsel echoed trial counsel by contending that striking the record and giving a curative instruction was insufficient to remedy Sgt. Givens's and Det. D'Ambrosio's testimony regarding Petitioner's alleged confession about the disposition of the crime vehicle. (Id.) Second, appellate counsel claimed that there was insufficient proof at Petitioner's Huntley Hearing to show that Petitioner's confession was voluntary. (App. B at 24-26.) In arguing this point, appellate counsel did not repeat trial counsel's argument that Petitioner had been improperly isolated from his mother, stating explicitly that "there is no contention in this case that the police engaged in the same kind of isolationist tactics as in [People v.] Bevilaqua and Townsend." (App. B at 25.) Instead, appellate counsel argued that Petitioner's mother, Mahalia Cash, invoked Petitioner's right to counsel prior to Petitioner's

interrogation at the Public Safety Building.  (See App. B at 24-26.)

Petitioner filed a *pro se* supplemental brief along with his appellate counsel's brief.  While also arguing that the trial court improperly denied his motion to set aside the verdict pursuant to C.P.L. § 330.30 because the trial court's remedy was insufficient, Petitioner's focus was that the trial court authorized a read-back of Det. D'Ambrosio's testimony given on direct examination, allowing the jury to hear the same information that had been stricken from cross examination.  (App. E at 25-26.)

The New York State Appellate Division, Fourth Department, upheld Petitioner's conviction.  See People v. Brown, 309 A.D.2d 1258 (4th Dept. 2003).  The court held that Petitioner had not properly preserved his § 330.30 argument because he "neither objected further nor requested a mistrial" when the trial court gave its curative instruction.  See Id. at 1258.  Since Petitioner first raised his insufficiency argument in his § 330.30 motion rather than when the trial court implemented its remedy, that argument was not preserved for appeal.  See Id. (citing People v. Hines, 97 N.Y.2d 56 (2001), rearg. denied 97 N.Y.2d 678 (2001); People v. Laraby, 92 N.Y.2d 932 (1998)).

The Appellate Division found the particular argument presented in Petitioner's supplemental brief to be similarly unpreserved. See Id. at 1258-59.  Because Petitioner did not register a protest when Det. D'Ambrosio's testimony from direct examination was read back to the jury, the Appellate Division declined to review

Petitioner's argument "as a matter of discretion in the interest of justice." See Id. (citing C.P.L. § 470.15(6)(a)). "In any event," the Appellate Division further held, "the curative instructions must be deemed to have corrected the error to the defendant's satisfaction" under the circumstances. See Id. at 1258 (citing People v. Heide, 84 N.Y.2d 943 (1994)).

Second, the Appellate Division held that Petitioner's mother could not invoke his right to counsel on his behalf, based on the general rule that a third party cannot so invoke on behalf of an adult defendant. See Id. (citing People v. Grice, 100 N.Y.2d 318, 324 n.2 (2003)). Because of this, the Appellate Division upheld the trial court's denial of Petitioner's motion to suppress his confession. See Id. The New York Court of Appeals denied Petitioner's motion to appeal. See People v. Brown, 1 N.Y.3d 595 (2004).

Petitioner then moved *pro se* in Monroe County Court to vacate the trial court's judgment pursuant to C.P.L. § 440.10(1)(h). (See App. J at 1.) Petitioner again claimed that the trial court erred when it allowed portions of Det. D'Ambrosio's testimony from direct examination to be read back to the jury even though it struck from the record the same testimony given during cross examination. (See Id. at 5.) Petitioner also claimed that he was denied effective assistance of counsel because trial counsel neglected to object (1) when the improper testimony was first brought in during Det. D'Ambrosio's direct examination, and (2) when the trial court

limited its remedy to striking the testimony given during cross examination and giving a curative instruction to the jury. (<u>See</u> Id. at 8, 10.)

The county court denied Petitioner's motion to vacate. (<u>See</u> App. M.) The court held that, because the record "clearly demonstrates the absence of an objection by defense counsel" to the instances complained of by Petitioner cited, the matter was not preserved for review in a § 440 motion. (<u>See</u> Id. at 4-5.) The court also dismissed Petitioner's first claim as having been decided by the Appellate Division. (<u>See</u> Id. at 5-7.) The Appellate Division, Fourth Department, denied Petitioner's request for leave to appeal the denial of his § 440 motion. (<u>See</u> App. S.)

Petitioner then moved *pro se* in the Appellate Division, Fourth Department, for a writ of error coram nobis, contending that he had been denied effective assistance of appellate counsel. (<u>See</u> App. T.) In support of his motion, Petitioner raised several points, including claims that: (1) appellate counsel neglected to argue that Petitioner was isolated from his mother immediately after his arrest under the rule established in <u>Townsend</u>, and that the trial court therefore should have suppressed Petitioner's confession; (2) appellate counsel failed to argue ineffective assistance of trial counsel, in that trial counsel neglected to object to the introduction and use of improper testimony; (3) appellate counsel failed to argue ineffective assistance of trial counsel, in that trial counsel neglected to preserve for appeal the argument that

there was insufficient evidence to support conviction for intentional murder. (See Id. at 20-53.) The Appellate Division denied Petitioner's motion, People v. Brown, 24 A.D.3d 1326 (4th Dept. 2005), and the Court of Appeals denied leave to appeal. People v. Brown, 6 N.Y.3d 846 (2006). This petition for habeas corpus relief followed.

## DISCUSSION

### I.   Standard of Review

In reviewing a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254, a federal district court makes an independent determination as to whether the petitioner is in custody in violation of his rights under the Constitution or any laws and treaties of the United States. Coleman v. Thompson, 501 U.S. 722, 730 (1991), reh'g denied, 501 U.S. 1277, (1991). A federal court does not function as an appellate court to review matters within the jurisdiction of the state, or to review rulings and decisions of state trial and appellate courts when it reviews a state prisoner's habeas petition. Rather, the court only determines whether the proceedings in state court amount to a violation of federal constitutional rights. Id. Federal review of a state court conviction is limited to errors of federal constitutional magnitude which denied a criminal defendant the right to a fundamentally fair trial. Cupp v. Naughton, 414 U.S. 141, 144 (1973).

In cases where the petition is in state custody, the habeas court may not grant relief unless the challenged state court conviction was

> contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or...
>
> based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2). "Clearly established" federal law "refers to the holdings, as opposed to the dicta of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decisions." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is contrary to clearly established federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" that of the Supreme Court. Id. at 405.

A state court decision is an "unreasonable application" of Supreme Court precedent if it

> [i]dentifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts...[or] unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 407.

This standard applies even if the state court decision was a summary affirmation of the conviction that did not explicitly reject any federal claim, as long as the decision necessarily determined the claim. Sellan v. Kuhlman, 261 F.3d 303 (2d Cir. 2001).

Further, an "application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). A habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Typically, this means that federal habeas claims must have been included in both the petitioner's appeal to the state's intermediate appellate court and in an application for permission to appeal to the state's highest court. O'Sullivan, 526 U.S. at 848. Failure to exhaust may be excused, however, if the petitioner shows cause for the default and prejudice arising therefrom. Wainright v. Sykes, 433 U.S. 72, 87-88 (1977).

## II. Petitioner's claims related to the violation of C.P.L. § 710.30 are not cognizable on federal habeas corpus review

Petitioner's first, third, and fourth claims relate to his confession and the use at trial of that confession in violation of C.P.L. § 710.30. The trial court struck from the record certain testimony provided under cross examination and gave the jury a

curative instruction to ignore that testimony, but it then allowed the jury to re-hear that same information given as testimony under direct examination. (Tr. at 892, App. E at 25-26.) The trial court's remedy was therefore insufficient, Petitioner argues, because it allowed the jury to consider inadmissable evidence, thus violating his right to a fair trial and due process of law. (Petition for Writ of Habeas Corpus, Docket No. 1 ("Petition") at 12-15.) Petitioner therefore contends that the state courts improperly denied both Petitioner's motion for a new trial and his motion to vacate the judgment against him. (Petition at 6-10, 15-16.)

The Appellate Division found that Petitioner procedurally waived his § 710.30 claims, barring them from appellate review. See Brown, 309 A.D.2d at 1258. When a petitioner procedurally waives a claim under state law, the state courts are prevented from reviewing the claim, and federal courts are therefore precluded from considering the petitioner's claim on habeas review unless the petitioner can show cause for the default and prejudice resulting from his failure to preserve the issue for appeal. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wainwright, 433 U.S. at 81-87 (1977).

The Appellate Division properly applied a procedural bar to Petitioner's claims. Petitioner claims that the jury heard inadmissible evidence when, during deliberations, the court read back to them Det. D'Ambrosio's testimony from direct examination.

(Petition at 12-15.)  However, Petitioner did not object when the trial court (1) announced its remedy and gave the jury a curative instruction, or (2) read Det. D'Ambrosio's testimony back to the jury.  (Tr. at 892, 973-74.)  By neglecting to object at those times, Petitioner procedurally waived his claims that the trial court's remedy was insufficient and that the jury should not have re-heard parts of Det. D'Ambrosio's direct examination testimony.  See C.P.L. § 470.05; Brown, 309 A.D.2d at 1258.

Further, Petitioner has shown no "cause or prejudice" with respect to his failure to object to the trial court's ruling.  Although it is true that ineffective assistance of counsel may qualify as cause, Murray v. Carrier, 477 U.S. 478, 488 (1986), Petitioner did not receive ineffective assistance of counsel, as described below.  Petitioner's claims one, three, and four are therefore procedurally barred and are thus not cognizable by this Court.

### III. <u>Petitioner's claim regarding the denial of his motion to suppress his confession is unexhausted</u>

In Petitioner's second claim, he argues that the evidence at his <u>Huntley</u> Hearing was insufficient to prove that his confession was voluntary.  (<u>See</u> Petition at 10.)  However, Petitioner's argument in support of this claim, that he was isolated from his mother in violation of <u>People v. Townsend</u>, "fundamentally alter[s] the legal claim already considered by the state courts." <u>Vasquez v. Hillery</u>, 474 U.S. 254, 260 (1986).  His claim is therefore unexhausted and cannot be examined on habeas review.  <u>See</u> <u>Id.</u>

On direct appeal, Petitioner's appellate counsel raised a claim that there was insufficient evidence to prove that Petitioner's confession was voluntary. (See App. B at 24.) However, on direct appeal, Petitioner argued that his mother had requested the assistance of counsel for her son, rendering the police interview with Petitioner improper and Petitioner's confession inadmissable. (See Id. at 24-26.) Appellate counsel stated explicitly that there was "no contention in this case that the police engaged in the same kind of isolationist tactics as in [People v.] Bevilaqua and Townsend." (See Id. at 25.)

Petitioner now argues that it has "never" been his contention that his mother invoked his constitutional right to counsel. (See Petitioner's Reply, Docket No. 11 ("Reply") at 31.) Rather, Petitioner contends that the "only relevance" of his mother's testimony is that it demonstrates his isolation as the result of official deception and trickery. (Id. at 32 (citing People v. Townsend, 33 N.Y.2d 37 (1973)). Petitioner rejects his appellate counsel's argument on direct appeal that Petitioner's mother invoked his right to an attorney, but instead argues that he lacked sufficient opportunity to obtain counsel because the police improperly isolated him from his mother. These are fundamentally different arguments. Further, Petitioner never presented his isolation argument before the state's intermediate appellate court, nor did he include it in an application for permission to appeal to the state's highest court. See O'Sullivan, 526 U.S. at 848.

Because the state courts did not have the opportunity to fully evaluate Petitioner's second claim, the claim is unexhausted.  See Vasquez, 474 U.S. at 260; Caballero v. Keane, 42 F.3d 738, 740-41 (2d Cir. 1994); Rodriquez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991); Saracina v. Artus, 2007 WL 2859722, at *8 (W.D.N.Y. Sep. 26, 2007) (finding no exhaustion where allegation in state courts was "fundamentally different" from that raised in habeas petition).  As stated supra, unexhausted claims are not cognizable on federal habeas review.

## IV. Petitioner was not denied effective assistance of trial counsel

Petitioner claims that he was denied effective assistance of trial counsel in that his trial counsel failed to object to testimony that violated C.P.L. § 710.30.  Specifically, Petitioner claims that his trial counsel was ineffective for failing to object when: (1) testimony regarding Petitioner's alleged disposition of the crime vehicle was offered on direct examination; (2) the trial court limited its curative instruction to portions of cross examination; and (3) testimony from direct examination was read back to the jury, even though the same information had been stricken from testimony given on cross examination.  (See Petition at 16-18.)  Petitioner further claims that the state courts erred when they refused to vacate the judgments against him based on his claim of ineffective assistance of counsel.  (See Id. at 18-20.)  For the reasons set forth below, I find that these claims are without merit.

The Sixth Amendment right to assistance of counsel guarantees the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). Whether a criminal defendant's representation is constitutionally inadequate is a mixed question of law and fact. Cuyler v. Sullivan, 446 U.S. 335, 342 (1980). The appropriate constitutional standard for assessing attorney performance is "reasonably effective assistance." Strickland, 466 U.S. at 687.

To demonstrate constitutional ineffectiveness, the defendant must first show that counsel's performance was deficient. Id. at 687. In making this determination, the court must "determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. In gauging deficiency, the court must be "highly deferential" to counsel's chosen actions, must consider "all the circumstances," must make every effort "to eliminate the distorting effects of hindsight," and must operate with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 688-89.

Generally, deficiencies in counsel's performance do not warrant setting aside the judgment in a criminal proceeding unless they are prejudicial to the defense. A habeas petitioner must demonstrate that there is a "reasonable probability" that, but for the deficiency, the outcome would have been different. McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999) (quoting

Strickland, 466 U.S. at 688).   A reasonable probability is a probability "sufficient to undermine confidence" in the trial's outcome.  Strickland, 466 U.S. at 688.  If an attorney's error has no effect on the judgment, the error does not result in the denial of effective assistance of counsel and therefore is not a violation of the Sixth Amendment.  Id. at 691.

In arguing that his trial counsel was deficient, Petitioner cites Mason v. Scully.  In that case, counsel's actions were found to be deficient where counsel failed to object when the prosecutor first sought to elicit objectionable testimony; failed to seek to have that testimony stricken; failed to object when the prosecutor included in summation the very implication that made that testimony improper; and failed to object to having the improper testimony read back to the jury.  Mason v. Scully, 16 F.3d 38, 44 (2d Cir. 1994).  However, Petitioner's case is distinguishable from Mason in that Petitioner's trial counsel effectively struck the offending testimony from cross examination and convinced the trial court to give the jury a curative instruction.  (See Tr. at 892.)

Further, the Mason court underscored the fact that the impropriety demanding counsel's objection was "obvious."  Mason, 16 F.3d at 44.  By contrast, it is not "obvious" in the instant case that the prosecution acted improperly in Petitioner's trial because C.P.L. § 710.30 does not preclude statements volunteered by witnesses.  People v. Jones, 159 A.D.2d 589, 590 (2d Dept. 1990), lv. denied 76 N.Y.2d 987 (1990).  In the exchange at issue during

Det. D'Ambrosio's direct examination, the detective offered
information regarding Petitioner's alleged disposition of the crime
vehicle in response to a question seeking general information about
Petitioner's confession. (Tr. at 658-59.)[2] This is not an obvious
evidentiary violation requiring objection in all circumstances. In
declining to object to this testimony, both when it was initially
offered and when the trial court allowed the jury to hear it later,
Petitioner's trial counsel did not depart the "wide range of
reasonable professional assistance." Strickland, 466 U.S. at
688-89.

Even assuming *arguendo* that Petitioner's trial counsel was
deficient in allowing this testimony into the record, Petitioner
has failed to demonstrate that this error resulted in ineffective
assistance, for he has failed to establish prejudice. See
United States v. Castillo, 277 Fed.Appx. 77, 80 (2d Cir. 2008);
United States v. Leslie, 103 F.3d 1093, 1099 (2d Cir. 1997)
(failure to object to testimony was not ineffective assistance

---

[2]
The exchange in question proceeded as follows:
Prosecutor: "Okay. After the shots were fired did Mr. Brown
      indicate to you what he did next?"
Det. D'Ambrosio: "Yes. He said he jumped in the car, he fled the
      scene. I asked him what he did with the gun and his vehicle.
      He told me he had taken the gun, he drove on down Plymouth
      Avenue to the railroad crossing bridge over the Genesee River
      which goes to the University of Rochester. He stated he
      walked halfway across the trestle and he flung it, --"
Prosecutor: "The gun?"
Det. D'Ambrosio: "--the gun, into the river. He said--. I asked
      him where his vehicle was. He said his vehicle, he had parked
      it somewhere around Norton Street and St. Paul Street area."
      (Tr. at 658-59.)

where testimony "added little, if anything, to the persuasive force of the government's case").  In light of the substantial evidence of Petitioner's guilt that was presented at trial, Petitioner has failed to establish a "reasonable probability" that the outcome of his trial would have been different had the disputed testimony not been admitted.  Three civilian eyewitnesses placed a blue four-door Honda with tinted windows at the scene of the crime.  (Tr. at 541, 580, 632-33.)  Two witnesses testified that Petitioner was driving that vehicle near the crime scene just prior to the shooting. (Tr. at 544-45, 632-33.)  Two witnesses testified that the shooter was standing next to that vehicle while he shot at the victim. (Tr. at 551, 583.)  One witness positively identified Petitioner as the shooter.  (Tr. at 553.)  As recounted by Det. D'Ambrosio, Petitioner's confession independently corroborated these eyewitness accounts.  (Tr. at 656-59.)

To the extent that the evidence of Petitioner's guilt was disputed by defense witnesses, it was for the jury to determine the credibility of each party's witnesses.  See Quartararo v. Hanslmaier, 186 F.3d 91, 96 (2d Cir. 1999).  See also United States v. Torres, 552 F.3d 743, 747 (8th Cir. 2009) ("[I]t is within the province of the jury to make credibility assessments and resolve conflicting testimony"); United States v. Bhagat, 436 F.3d 1140, 1146 n.3 (9th Cir. 2006) (finding that the trier of fact determines "credibility of witnesses" and resolves conflicts in evidence). The jury apparently resolved this issue against Petitioner.  See

Knight v. Walsh, 524 F. Supp. 2d 255, 299 (W.D.N.Y. 2007) (citing United States v. Walsh, 194 F.3d 37, 51-52 (2d Cir. 1999) (holding that the jury is free to resolve discrepancies in testimony in favor of the government)).

For the reasons stated above, Petitioner did not receive ineffective assistance of trial counsel. Petitioner's fifth and sixth claims are therefore without merit.

## V. Petitioner did not receive ineffective assistance of appellate counsel

The Fourteenth Amendment guarantees a criminal defendant the assistance of counsel in his first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 388 (1984) (citing Douglas v. California, 372 U.S. 353, 356-57 (1963)). This necessarily entails the right to effective assistance of appellate counsel. Evitts, 469 U.S. at 397. Appellate counsel, however, does not have a constitutional duty to raise and argue every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745, 751 (1983). *A fortiori*, counsel has no obligation to raise a claim that could properly be deemed frivolous. Moreover, as the Supreme Court stressed in Jones, 463 U.S. at 751, counsel must apply his or her professional judgment to the task of identifying the issues most likely to succeed on appeal. Often there are only a few such issues, and a *per se* rule requiring counsel to argue every viable issue would hamstring counsel in forcefully arguing the appeal. Id. at 752-53.

An appellate counsel's failure to raise a claim on appeal, or his decision not to do so, will therefore amount to ineffective

assistance only when it is "outside the wide range of professionally competent assistance." <u>Claudio v. Scully</u>, 982 F.2d 798, 805 (2d Cir. 1992) (quoting <u>Strickland</u>, 466 U.S. at 690). That standard is breached when "no reasonably competent attorney could have missed the...claim," <u>Id.</u>; when a "decision not to raise the claim cannot be viewed reasonably as a strategic decision," <u>Id.</u> (citing <u>Jones</u>, 463 U.S. at 753); or when "counsel omitted significant and obvious issues, while pursuing issues that were clearly and significantly weaker." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994).

In his seventh, eighth, ninth, tenth, eleventh, and twelfth claims, Petitioner collectively contends that he received ineffective assistance of appellate counsel because his appellate counsel "omitted obvious and significant issues, while pursuing weaker claims." (Petition at 20.) Specifically, Petitioner argues that appellate counsel did not, but should have, raised on appeal claims that: (1) the trial court erred in denying the suppression of his confession because the police isolated Petitioner from his mother in violation of <u>People v. Townsend</u>, (Id. at 25-27; Reply at 41-43); (2) he received ineffective assistance of trial counsel, in that trial counsel failed to properly object to the introduction and use of testimony that violated C.P.L. § 710.30, (Petition at 28-29, 31); and (3) he received ineffective assistance of trial counsel, in that trial counsel failed to preserve for appeal the

argument that the evidence was insufficient to support conviction for intentional murder. (Petition at 33.)

On appeal, appellate counsel claimed that the trial court improperly denied Petitioner's motion for a new trial, and that the trial court erred in denying the suppression of Petitioner's confession because Petitioner's mother had invoked his right to counsel. (See App. B.) Although these arguments ultimately proved unavailing, Petitioner's substitute claims are not "particularly strong." See Mayo, 13 F.3d at 534. Appellate counsel therefore did not omit "significant and obvious issues," while arguing issues "that were clearly and significantly weaker." Id. at 533. Thus, Appellate counsel's actions did not fall "outside the wide range of professionally competent assistance." Claudio, 982 F.2d at 805, and therefore Petitioner did not receive ineffective assistance of appellate counsel.

## A. The trial court did not err in denying the suppression of Petitioner's confession

Petitioner argues first that his appellate counsel should have claimed that the police isolated him from his mother in violation of People v. Townsend, thereby sealing him off from the most likely avenue by which he might obtain assistance of counsel, and that the trial court therefore erred in denying the suppression of Petitioner's confession. (See Petition at 25-27; Reply at 41-43.) However, this claim is not strong enough to support a claim that appellate counsel was ineffective when he declined to make this argument.

The trial court conducted a <u>Huntley</u> Hearing, in which the trial judge heard conflicting testimony regarding the events surrounding Petitioner's arrest and confession. (<u>See</u> H.H.1 and H.H.2.) The trial judge then found as a matter of fact that Petitioner was not isolated in violation of <u>Townsend</u>. (Court Appearance, Jan. 31, 1996, at 2.) Under New York law, which the Court must consider here in evaluating a claim's appellate strength, <u>see</u>, <u>e.g.</u>, <u>Aparicio v. Artuz</u>, 269 F.3d 78, 96 (2d Cir. 2001) (applying New York law to explain the futility of a potential appellate claim), such findings of fact are given great deference on appeal and are only to be disturbed when they are clearly unsupported by the record. <u>See</u> <u>People v. Rivera</u>, 59 A.D.3d 467, 467 (2d Dept. 2009); <u>People v. Cooper</u>, 38 A.D.3d 678, 679 (2d Dept. 2007) (finding that a hearing court's factual determinations "should not be disturbed unless they are clearly unsupported by the record"); <u>People v. Aldrich</u>, 243 A.D.2d 856, 856-57 (3d Dept. 1997) ("great deference is to be accorded to findings of the trier of the facts," and therefore a "finding of voluntariness may be rejected only where such a finding is premised on clearly insufficient evidence") (citing <u>People v. Leonti</u>, 18 N.Y.2d 384, 390 (1966)); <u>People v. Brooks</u>, 234 A.D.2d 149, 149 (1st Dept. 1996); <u>People v. Bastow</u>, 217 A.D.2d 930, 931 (4th Dept. 1995) ("determinations of the trier of fact must be accorded great deference on appeal"). Petitioner therefore has a heavy burden to demonstrate that the result of the <u>Huntley</u> Hearing was clearly unsupported.

Although Off. Montalvo did testify at trial, Petitioner points out the Montalvo did not testify at the <u>Huntley</u> Hearing. (<u>See</u> Petition at 25-27.) Therefore, prior to trial, Off. Montalvo did not directly refute Mahalia Cash's testimony that she and Montalvo had a conversation at the Public Safety Building shortly after 10:00am, during which Montalvo informed her that Petitioner had confessed up to two hours before the confession actually occurred. (<u>See</u> H.H.2 at 43-45.) Petitioner therefore contends that the trial court was required to accept Cash's testimony as true, and it was clear error to find that the police did not use "tactics calculated to make certain that the defendant's parents will not take any steps to get him a lawyer." <u>See</u> <u>Townsend</u>, 33 N.Y.2d at 41-42; Petition at 25-27; Reply at 26-28, 41-43.

Cash, however, also testified that she "left and went home" after speaking with Off. Montalvo, and that she subsequently visited the Public Defender's office to obtain a lawyer for Petitioner. (H.H.2 at 45-46, 51.) She did not discuss returning to the Public Safety Building at any point. When Sgt. Givens testified to speaking with Cash at the Public Safety Building at 1:00pm, he therefore provided conflicting testimony regarding when Cash was at the Public Safety Building, with whom she allegedly spoke, and what she was told. (H.H.2 at 24-25.) It was not clear error under New York law to resolve that conflict in favor of the prosecution. <u>See</u> <u>People v. Jackson</u>, 65 N.Y.2d 265, 272 (1985) (conflicting testimony "simply creates a credibility question for

the jury, to be determined by them in the context of the entire body of evidence before them"); <u>People v. Stewart</u>, 40 N.Y.2d 692, 699 (1976) (conflicting testimony between witnesses simply creates a credibility question for the trier of fact).

Beyond the interaction between Cash and the police at the Public Safety Building, and the credibility question attendant to it, there is no evidence that the police deceived Petitioner's mother about her son's situation. Cash witnessed Petitioner's arrest, she knew he was being taken to the Public Safety Building for questioning, and she knew that questioning was likely in connection with a homicide. (H.H.2 at 34-35, 39-43.) Under these circumstances, there was no clear error when the trial court found that Cash was neither deceived nor tricked into waiting to obtain counsel for her son. (<u>See</u> Court Appearance, Jan. 31, 1996, at 2.) There was no clear error in finding that Petitioner had not been isolated from his mother in violation of <u>Townsend</u>, and that Petitioner's confession was therefore voluntary. <u>See People v. Salaam</u>, 83 N.Y.2d 51, 55-56 (1993) (finding no improper isolation where police did not conceal defendant's location nor deceive the defendant's family); <u>Townsend</u>, 33 N.Y.2d at 41-42 (finding that confession was involuntary because police lied to mother about defendant seventeen-year-old son's location); <u>People v. Delgado</u>, 269 A.D.2d 604, 605 (2d Dept. 2000) (finding no improper isolation where mother was aware of defendant son's location and situation).

Absent clear error, Petitioner's claim that appellate counsel should have argued that he was improperly isolated is without merit. It is therefore not a "particularly strong" argument, and its omission is not grounds for finding ineffective assistance of appellate counsel. See Mayo, 13 F.3d at 534.

**B.  Petitioner did not receive ineffective assistance of trial counsel when trial counsel did not object to the admission and use of testimony that may have violated C.P.L. § 710.30**

As state above in Discussion Section IV, trial counsel was not deficient in failing to object to testimony regarding what Petitioner allegedly did with the crime vehicle following the victim's shooting. Because trial counsel was not ineffective, Petitioner was not denied effective assistance of appellate counsel when his appellate counsel declined to raise such a claim on appeal.

**C.  Petitioner did not receive ineffective assistance of trial counsel when trial counsel did not preserve for appeal the argument that there was insufficient evidence to prove intentional murder**

Petitioner contends that there was insufficient evidence to prove that he intended to murder Tyshawn Flagler, and that he received ineffective assistance of trial counsel when trial counsel neglected to preserve that issue for appeal. (See Petition at 33-35.) Petitioner argues that appellate counsel was ineffective when he did not raise this claim. (Id.) However, Petitioner's claim of ineffective assistance of trial counsel is without merit, and

appellate counsel was therefore not required to raise this claim on appeal.  See Mayo, 13 F.3d at 534.

"A habeas petitioner challenging the sufficiency of the evidence supporting his conviction bears a heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995), cert. denied, 515 U.S. 1136 (1995).  The standard to be applied in a federal habeas corpus petition when the petitioner claims he was convicted in state court on insufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). To determine the essential elements of the crime, the habeas corpus court must look to state law, see Jackson, 443 U.S. at 324 n.16; Quartararo, 186 F.3d at 97, and the evidence must be reviewed as a whole.  See generally Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) ("Assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments on both of these issues").

The court is not required to decide whether it believes that the evidence at trial established guilt beyond a reasonable doubt, but whether any rational trier of fact could have found guilt beyond a reasonable doubt based on the evidence presented.  See Jackson, 443 U.S. at 319.  In making this assessment, a federal habeas court must "credit every inference that could have been

drawn in the state's favor...whether the evidence being reviewed is direct or circumstantial." Reddy v. Coombe, 846 F.2d 866, 869 (2d Cir. 1988), cert. denied, 488 U.S. 929 (1988). The jury is also permitted to "draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. Thus, when faced with a record from which conflicting inferences may be drawn, the habeas corpus court must presume, even if the record does not show it affirmatively, that the trier of fact resolved the conflict in favor of the prosecution, and the court must defer to that resolution. See Wright v. West, 505 U.S. 277, 297 (1992).

Petitioner was convicted of intentional second degree murder. (See Tr. at 964-65, 979.) Under New York law, a defendant is guilty of intentional second degree murder when, "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person." N.Y. Penal Law § 125.25(1). The jury may infer intent to kill from the totality of the defendant's conduct. See People v. Horton, 18 N.Y.2d 355, 359 (1966). An inference of intent from the defendant's conduct does not require express statements, but may arise from circumstantial evidence. See Stone v. Stinson, 121 F.Supp.2d 226, 247 (W.D.N.Y. 2000). Further, it is well settled that, generally, the jury may presume that a person intends the "natural and probable consequence of his own acts." People v. Breen, 181 N.Y. 493, 501 (1905). New York courts have found evidence of intent to kill where the defendant chased the victim, shooting the victim repeatedly or shooting in

the victim's direction.  See People v. Colon, 275 A.D.2d 797, 797 (2d Dept. 2000), lv. denied 95 N.Y.2d 904 (2000); People v. Jones, 229 A.D.2d 597, 597 (2d Dept. 1996), lv. denied 88 N.Y.2d 1022 (1996).

In the instant case, there is evidence that Petitioner chased his victim and fired at him repeatedly with an assault rifle. (Tr. at 546-51, 553, 581-585, 656-59.)  To the extent that this evidence was in dispute, it was for the jury to weigh the evidence and evaluate witness credibility.  See Maldonado, 86 F.3d at 35. Because the evidence, if believed, was sufficient evidence to convict Petitioner of intentional second degree murder, his claim that appellate counsel was ineffective for failing to raise this issue is without merit.  See Mayo, 13 F.3d at 534.  Accordingly, Petitioner's claims seven through twelve are without merit.

## CONCLUSION

For the reasons stated above, Brown's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Further, because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability.  28 U.S.C. § 2253.

ALL OF THE ABOVE IS SO ORDERED

      s/Michael A. Telesca
        MICHAEL A. TELESCA
    United States District Judge
Dated:    Rochester, New York
          July 23, 2009